# EXHIBIT B

100Rs.



SHAREHOLDERS AGREEMENT

among

GOVERNMENT OF INDIA

and

STERLITE INDUSTRIES (INDIA) LTD
and

BHARAT ALUMUNIUM COMPANY LIMITED

March 2, 2001

## SHAREHOLDERS AGREEMENT

THIS SHAREHOLDERS AGREEMENT is made and entered into on this 2nd day of March 2001.

BY AND AMONG:

**THE PRESIDENT OF INDIA**, acting through and represented by the Secretary, Ministry of Mines and Minerals, Department of Mines of the Government of India (hereinafter referred to as the **"Government"**)

-and-

**STERLITE INDUSTRIES (INDIA) LTD** a company duly incorporated and existing under the provisions of the Act (as hereinafter defined)/laws of India with its registered office at B-10/4, Waluj MIDC Industrial Area, Waluj, Dist: Aurangabad – 431 133, Maharashtra, India (hereinafter referred to as the **"Strategic Partner"** or the **"SP"** which expression shall include its successors, Affiliates (as defined hereinafter), permitted assigns and liquidators)

and

**BHARAT ALUMINIUM COMPANY LIMITED**, a public limited company duly incorporated and existing under the provisions of the Companies Act, 1956, as amended, with its registered office at Aluminium Sadan, Scope Complex, Lodi Road, New Delhi, India (hereinafter referred to as the **"Company"**)

## RECITALS

A. The Company is engaged in a business that, among others, involves manufacture, sale and distribution of primary aluminium metal and aluminium products.

B. The authorized share capital of the Company is Rs. 500,00,00,000/- (Rupees Five Hundred Crores Only) divided into 50,00,00,000/- (Fifty Crores) voting equity shares of Rs. 10 each.

C. The issued paid-up share capital of the Company is Rs. 220,62,45,000/- (Rupees Two Hundred Twenty Crores Sixty Two Lacs Forty Five Thousand Only) divided into 22,06,24,500 (Twenty Two Crores Six Lacs Twenty Four Thousand Five Hundred Only) voting equity shares of Rs. 10 each.

D. The Government is the beneficial and legal owner of 22,06,23,700 (Twenty Two Crores Six Lacs Twenty Three Thousand Seven Hundred Only) voting equity shares of the Company representing 99.99% of the total issued and paid up share capital of the Company.

Government

SP
Page 2

Company

E.    The remaining 800 voting equity shares are being held by nominees of the Government. (hereinafter referred to as the **"Nominee Subscribers"**) more specifically stipulated in Schedule "A" of the Share Purchase Agreement.

F.    The SP, the Company and the Government are parties to an agreement of even date whereby the Government has, subject to the terms and conditions stated therein, agreed to sell and cause the Nominee Subscribers to sell to the SP, and the SP has agreed to purchase from the Government and the Nominee Subscribers, 11,25,18,495 (Eleven Crores Twenty Five Lacs Eighteen Thousand Four Hundred Ninety Five) voting equity shares of the Company (such shares, the **"Purchase Shares"**, and such agreement, the **"Share Purchase Agreement"**).

G.    The Parties have entered into this Agreement to record their agreement as to the manner in which the Company's affairs shall be conducted after the SP acquires the Purchase Shares from the Government and to grant to each other certain rights and obligations with respect to their ownership, directly and indirectly, of the voting equity shares of the Company.

H.    Subject to Clause 7.2, the Parties envision that all employees of the Company on the date hereof shall continue in the employment of the Company.

I.    The Government, as a significant shareholder of the Company shall extend reasonable co-operation to the Company to facilitate the conduct of the business of the Company.

      The SP recognises that the Government in relation to its employment policies follows certain principles for the benefit of the members of the Scheduled Caste/Scheduled Tribes, physically handicapped persons and other socially disadvantaged categories of the society. The SP shall use its best efforts to cause the Company to provide adequate job opportunities for such persons. Further, in the event of any reduction in the strength of the employees of the Company, the SP shall use its best efforts to ensure that the physically handicapped persons are retrenched at the end.

**NOW, THEREFORE,** in consideration of the premises and mutual agreements and covenants contained in this Agreement and other good and valuable consideration (the receipt and adequacy of which are hereby mutually acknowledged), each of the Parties hereto hereby agree as follows:

Government                          SP
                              Page 3                      Company

# ARTICLE 1

## DEFINITIONS AND PRINCIPLES OF INTERPRETATION

1.1     Definitions

In addition to the terms defined in the introduction to and the text of this Agreement, wherever used in this Agreement, the following words and terms shall have the meanings set out below:

"**Act**" means the Indian Companies Act, 1956, as now enacted or as the same may from time to time be amended, re-enacted or replaced;

"**Affiliate**" means, with respect to any Party, any Person which is a holding company or subsidiary of such Party, or any Person which, directly or indirectly, (a) owns or controls such Party, (b) is owned or controlled by such Party, or (c) is owned or controlled by the same Person who, directly or indirectly, owns or controls such Party. For the purposes of this Agreement, the terms "holding company" any "subsidiary" shall have the meanings ascribed to them under Section 4 of the Act, and the term "control" shall mean:

a)     control over the composition of Board of Directors of an entity; or

b)     control of at least 51% of the issued equity share capital of a company.

Provided however that in no event shall the Company be deemed an Affiliate of either the Government or the SP.

"**Agreement**" means this Shareholders Agreement and all attached schedules and all instruments supplemental to or in amendment or confirmation of this Agreement entered into by the Parties in writing;

"**Board**" means the board of directors of the Company;

"**Business Day**" means a day, other than a Saturday or Sunday, on which the principal commercial banks located in Mumbai/New Delhi are open for business during normal banking hours;

"**Event of Bankruptcy**" in respect of a Person (other than the Government) means the first to occur of any of the following:

i)     If the Person makes an assignment for the benefit of creditors; or

ii)     If a Provisional or Official Liquidator is appointed in relation to any Person by an appropriate court under any applicable Law; or

Government                          SP                          Company
                                     Page 4

reasonable efforts to comply and to cause the Company to comply with, this Agreement. Each of such Shareholder shall, at all times, cause its respective nominee(s) as directors of the Company to act in accordance with this Agreement, amend the articles of association of the Company to conform to this Agreement, and cause the Company to adopt such amended articles of association through the passage of appropriate Board and shareholder's resolutions and take other actions as required under law in this regard.

2.3     **Compliance by the Company**

The Company undertakes to carryout and be bound by the provisions of this Agreement to the fullest extent that it has the capacity and power at law to do so. The Shareholders shall, to the extent possible, cause the Company to take all steps as may be necessary to effectively adopt, abide by and ratify the terms of this Agreement.

2.4     **Compliance with Laws**

In carrying out the obligations specified herein, the Parties shall comply with all applicable Laws.

### ARTICLE 3
### EQUITY PARTICIPATION; FINANCIAL SUPPORT

3.1     **Equity Participation**

(a)     The Company and the Government represent and warrant to the SP that upon the occurrence of the Closing, the Shareholders' respective equity shareholding in the Company shall be as follows:

| Shareholder | Number of Voting Equity Shares | Percentage of Total Equity Share Capital |
|---|---|---|
| Government | 10,81,06,005 | 49% |
| SP and Purchaser Nominees | 11,25,18,495 | 51% |

3.2     **Additional Capital**

(a)     **Notwithstanding** any other provision of this Agreement, if the Board, in exercise of good faith and in its **reasonable judgment**, determines that the Company requires additional funds and such funds cannot be **obtained from** banks or other financial institutions on reasonable arms-length commercial terms (or terms

Government                           SP                                      Company

does not exercise its option to acquire or cause its nominee to acquire the Right and the renouncing Shareholder offers the Right to a third party, such renouncing Shareholder shall exercise all the rights and privileges on behalf of such third party and shall be responsible for all the duties and obligations of such third party under the terms of this Agreement. The rights of the renouncing Shareholder and such third party shall be the rights available to the renouncing Shareholder under this Agreement and no additional rights or privileges shall accrue to or be available to the renouncing Shareholder or the third party.

(c)    For the avoidance of doubt, under no circumstances shall a failure to provide funds by a Shareholder pursuant to a Funding Notice be considered to be a default by such Shareholder under this Agreement or make such Shareholder in any way liable for the payment of such funds.

**3.3    Adherence by Affiliates**

In the event that any of the Affiliate(s) of the SP becomes a Shareholder of the Company, whether pursuant to a renunciation of a Right under Clause 3.2 or otherwise, such Affiliate of the SP shall adhere to this Agreement and be compliant with the provisions hereof.

## ARTICLE 4
## MANAGEMENT OF THE COMPANY

**4.1    Board of Directors**

a)    So long as the SP, directly or indirectly through its Affiliates, continues to hold at least 51% of the voting equity share capital of the Company, the Company shall have a Board consisting of not more than 12 directors who shall be appointed by the Government and the SP in proportion of their equity shareholding in the Company. Provided however that the SP shall have at all times the right to appoint such number of directors on the Board such that the SP always has control over the majority of the votes on the Board.

b)    The Parties agree that immediately after the sale and purchase of the Purchase Shares between the Government and the SP, the Board shall comprise of 9 directors of which the SP shall have the right to appoint 5 directors (including the chief executive officer/managing director).

c)    The Government shall have the right to appoint the remaining 4 directors who shall all be non-working directors of the Company. Provided that the Government agrees it shall not appoint any


Government                                    SP                                    Company
                                           Page 9

person as its nominee to the Board if such person is a director or employee of any other company or entity that is engaged in any activity or business in competition with the business of the Company.

d)      Both the Government and the SP shall vote the equity shares of the Company held by them to elect/remove the directors nominated in accordance with this Agreement.

e)      In the event that the Board constitutes a share transfer committee for the purposes of effecting the transfer of Shares, such share transfer committee shall include one nominee of the SP and the Government each.

**4.2      Removal and Replacement of Nominees**

The Government and the SP shall be entitled to remove any director nominated by them by notice to such director and the other Parties. Any vacancy occurring on the Board by reason of the death, disqualification, inability to act, shall be filled by the Party whose nominee was so affected so as to maintain a Board that is consistent with the provisions of Clause 4.1.

**4.3      Meeting of Board**

The Board shall meet at least once every calendar quarter period during the term of this Agreement and in the event that a meeting of the Board is not held during any such quarter period, any director may call a meeting of the Board on 48 hours prior notice to the other directors. At each meeting of the Board, unless waived by atleast one nominee director each of the SP and the Government, the chief executive officer/managing director of the Company shall report duly to the Board with respect to the current status of the operations of the Company and with respect to all major developments or planned action involving the Company and shall present to the meeting complete current financial information with respect to the Company.

**4.4      Quorum**

a)      The quorum requirements for the Board and shareholders meeting of the Company shall be governed by the provisions of the Act and the SP shall ensure that the Government is given reasonable notice of all such meetings in a timely manner.

b)      Notwithstanding anything to the contrary in sub-clause 4.4(a) above, the presence of at least one

Government                                    SP                                    Company
                                       Page 10

nominee director each of the Government and the SP, in case of a Board meeting, or at least one authorised representative each of the Government and the SP, in case of a general meeting, shall be necessary to constitute quorum for any meeting in which a resolution for any of the matters specified in Schedule 4.5 is to be passed and a notice of not less than 7 (seven) days shall be given to the Government and the SP for any such meeting, unless the Government and the SP agrees to a shorter notice in writing.

c)   In the event that no nominee director or authorised representative of either the Government or the SP is present at a meeting referred to in sub-clause 4.4(b) above, such meeting shall stand adjourned to the same day in the next week, at the same time and place, or to such later day as may be notified to the Government or the SP as the case may be.

d)   In the event that no nominee director or authorised representative of the same Shareholder, whose nominee director/authorised representative was not present in the meeting referred to in sub-clause 4.4(b), is present at the adjourned meeting referred to in sub-clause 4.4(c) above, such meeting shall stand adjourned to the same day in the next week, at the same time and place, or to such later day as may be notified to such Shareholder.

e)   Notwithstanding anything to the contrary in sub-clause 4.4(b) above, in the event that no nominee director/authorised representative of the same Shareholder, whose nominee director/authorised representative was not present in the meetings referred to in sub-clauses 4.4(b) and 4.4(c), is present at the adjourned meeting referred to in sub-clause 4.4(d), it shall be deemed that the presence of the nominee director/authorised representatives of such Shareholder is not required for such meeting and the directors/shareholders present at such adjourned Board/general meeting shall be entitled to proceed with the items on the agenda in such manner as they deem fit even though such items may be relating to matters listed in Schedule 4.5.

**Approval of Matters**

Notwithstanding any other provision of this Agreement or otherwise permitted or provided under the Act, no obligation of the Company or any of its subsidiaries shall be entered into, no decision shall be made and no action shall be taken by or with respect to the Company or any of its subsidiaries in relation to the matters identified in Schedule 4.5, unless such obligation, decision or action, as the case may be, is approved:

a)   If at any meeting of the Company's shareholders duly called for the purpose of considering such obligation, decision or action, by an affirmative vote of the one authorised representative of both

Government

SP
Page 11

Company 

the Government and the SP;

b) If at the meeting of the Board, then subject to the provisions of sub-clause 4.4(e) by at least one nominee director of each of the Government and the SP.

**4.6 Voting**

Excepting the matters listed in Schedule 4.5, the Government or any other entity nominated by it shall, at all shareholders' meeting of the Company, exercise the voting rights attached to the voting equity shares of the Company held by the Government in the manner directed in writing by the SP. For purposes of clarity and avoidance of doubt, on any resolution that directly or indirectly relates to matters specified in Schedule 4.5, the Government shall be free to exercise the voting rights attached to the Company's shares held by it in the manner it deems fit.

**4.7 Managing Director**

Throughout the term of this Agreement, the Company shall have a Managing Director appointed by the Board in accordance with Clause 4.1(b). The Managing Director shall be a member of the Board and shall manage the daily operations of the Company. The term of the office of the Managing Director shall be determined by a resolution of the Board. The Managing Director shall function under the supervision, control and direction of the Board and shall, subject to such supervision, control and direction, have the authority to manage the business operations of the Company. Subject to the provisions of Clause 4.5 read with Schedule 4.5, the powers and duties of the Managing Director shall be defined and/or modified from time to time by resolution of the Board, and shall include the powers and duties to:

(a) incur capital expenditure which has been previously approved by the Board and any other operational expenditure;

(b) appoint and terminate any buyers, suppliers, ancillaries, franchisees and distributors;

(c) appoint, retrench and/or dismiss employees, consultants and contract labour of the Company, subject to Clause 7.2 and other applicable provisions of this Agreement, the applicable staff regulations, the standing orders of the Company and applicable Law;

(d) make decisions regarding the marketing of the Company's products, including fixing the price, margins, discounts and determining the advertisement policy and budgets;

Government                     SP
                              Page 12                                Company

(e)     make operational decisions regarding the quality and product constituents for the customers; and

(f)     take such actions or execute such contracts on behalf of the Company that are in the ordinary course of business of the Company.

**4.8     Reporting Requirements**

The SP shall ensure that the Company provides to the Government:

(i)     annually within 3 (three) months of the end of a relevant financial year an audited profit and loss account, balance sheet and cash flow analysis for such financial year, together with all reports and statements required to be annexed thereto;

(ii)    at least thirty (30) days prior to the commencement of a financial year, the projections, financial budget and operating plan for the next succeeding three financial years and in respect of the first financial year of such succeeding three years a detailed financial budget and operating plan which shall be prepared on a quarterly basis;

(iii)   within sixty (60) days of the end of each quarter period, financial statements for such quarter showing profits or losses before taxation, taxation on profits, profits or losses attributable to shareholders, the balance at the end of the period of share capital and reserves, and comparative figures for the previous quarter and any other financial information together with a commentary on the business of the Company;

(iv)    such reports and such additional information prepared in the usual form of the Company concerning any financial data regarding operations, financial condition, business, affairs or prospects of the Company.

# ARTICLE 5
# DEALING WITH SHARES

**Restrictions on Transfer of Shares**

(a)     Except as expressly provided in this Agreement, or as may otherwise be unanimously agreed, the SP shall not, for a period of 3 (three ) years from Closing, directly or indirectly, sell, transfer, assign, pledge, charge, mortgage or in any other way dispose of or encumber (any such, a "Transfer") any Purchase Shares or the legal or beneficial ownership of Purchase Shares or any of its rights or obligations under this Agreement, to any Person without first complying with all of the provisions of this Agreement.

a)    disclosure to the employees and auditors requiring the information for the purposes of this Agreement subject to the execution of a confidentiality agreement by them; or

b)    legal advisors and professional consultants subject to the execution of a confidentiality agreement by them; or

c)    if the information is, prior to the execution of this Agreement, lawfully in the possession of the SP through sources other than the party who supplied the information; or

d)    if required by Law; or

e)    if the information is or becomes generally and publicly available, other than due to reason of breach of this Agreement.

## ARTICLE 9
## GOOD FAITH

9.1    The SP confirms that it has, prior to the Closing, disclosed particulars to the Government of any activities or business that it is engaged in that are in competition with the business of the Company.

9.2    In the event that the SP, its Affiliates or its nominees at any time after Closing, decides to undertake any activities or businesses that may be in competition with the then existing business of the Company, the SP shall be under an obligation to disclose such activity or business to the Government.

9.3    The SP agrees that, in the event that, at any time, the SP, its Affiliates or its nominees is engaged in any activities or businesses that may be or is in competition with the Company's business, both existing or future, then the SP its Affiliates or its nominees shall always act in good faith and in the interests of the Company.

## ARTICLE 10
## MANAGEMENT DEADLOCK

10.1    In the event that the Government withholds its consent for a matter specified in Schedule 4.5 in a Board Meeting and the same matter is placed before the Board in the next Board Meeting or a Board Meeting held within three (3) months of the first Board Meeting at which the consent was withheld by the Government,

Government                                    SP                                    Company
                                              Page 26

the Government may at is discretion, either:

a)     give its consent to such matter at such succeeding Board Meeting;

b)     determine that a deadlock ("**Deadlock**") has arisen and issue a written deadlock notice (the "**Deadlock Notice**") to the SP.

10.2   Within fourteen (14) days after receipt of a Deadlock Notice by the SP, the Parties shall refer the Deadlock Notice to the senior representatives of the SP and the Government for resolution of the Deadlock.

10.3   If the senior representatives of the Parties fail to resolve the Deadlock within sixty (60) days of the reference of the Deadlock Notice, or such extended period as may be agreed in writing between the Parties, the Parties shall proceed in accordance with Article 10.4.

10.4   In the event that the matter of Deadlock, is not resolved in terms of Article 10.3, the Government may serve notice on the SP requiring the SP to buy all the Shares held by the Government at the higher of their Fair Value or the unit sale price (as provided in Clause 2.1 of the Share Purchase Agreement at which the SP has purchased the Purchase Shares pursuant to the Share Purchase Agreement) together with interest at the rate of 14% per annum compounded with half yearly rests and calculated from the Closing Date after giving credit for the dividend received by the Government as a Shareholder of the Company during the period from the Closing till the date of the completion of the sale and purchase of the said shares.

10.5   In the event that the Government serves a notice on the SP pursuant to Clause 10.4, the SP shall complete the purchase of the Shares held by the Government within sixty (60) days of receipt of such notice.

## ARTICLE 11
## MISCELLANEOUS

**11.1   Arbitration**

a)     Any controversy or dispute which arises between the Parties to this Agreement concerning its construction or application, or the rights, duties or obligations of any Party hereunder, shall be referred to arbitration subject to the procedures set out in Schedule 11.1 to this Agreement.

b)     Notwithstanding anything to the contrary in sub-clause hereinabove, the Parties agree that any valuation pursuant to Clause 6.1 is an expert opinion and shall be final and binding on the Parties and shall not be the subject matter of dispute between the Parties.

Government                                    SP                                    Company

**IN WITNESS WHEREOF, each of the Parties** have caused this Agreement to be duly executed by their duly authorised representatives on the date and year first hereinabove written.

Witnessed by:

Name      R. SRINIVASAN
Address:  21A, JANPATH
          N. DELHI- 110001

Witnessed by

Name:     MR. SHARDUL S. SHROFF
Address:  3, LSC, Pamposh Enclave
          N Delhi 48

Witnessed by

Name:     O. P. KHAITAN.
Address   B-1, Defence Colony
          NEW DELHI.

For and on behalf of
GOVERNMENT OF INDIA
Signed By: **A. BAGCHEE**
Title:   **J.S. Min. of Mines**

(ARUNA BAGCHEE)
Joint Secretary
Ministry of Mines
Govt. of India New Delhi

For and on behalf of Bharat
Aluminium Company Limited
Signed By:
Title:   CMD, BALCO
   S. C. Tripathi

For and on behalf of
Sterlite Industries (India) Ltd
Signed By: Tarun Jain
Title:   Director (Finance)

Government

SP
Page 33

Company

SCHEDULE 4.5

Matters Requiring Special Consent

1.  Alter the provisions of the articles of association of the Company.

2.  Change the place of the registered office from one State to another.

3.  Commence any new line of business.

4.  Change the name of the Company.

5.  Issue further Shares without pre-emptive rights to members or convert loans or debentures into Shares and the terms and conditions of such issue.

6.  Determine that any portion of the share capital not already called up shall not be called up except in the event of, and for the purpose of, winding up the Company.

7.  Reduction of the share capital.

8.  Approval of variation of rights of special classes of Shares.

9.  Keep registers and returns at any other place than within city, town or village in which the registered office is situated.

10. Authorise the payment of interest on the paid-up amount of share capital raised for the purpose of defraying the expenses of construction of any work or building or the provisions of any plant that cannot be made profitable for a lengthy period.

11. Consent to a Director or his relative or partner or firm or private company holding an office or place of profit, except that of managing director, manager, banker, or trustee for debenture-holders of the Company.

12. Appoint sole selling or buying or purchasing agent .

13. Make loans or provide guarantees or security to other companies under the same management.

14. Apply to a Court to wind-up the Company.

Government

SP
Page 34

Company

15. Wind-up the Company voluntarily.

16. Bind the Company by a scheme of arrangement made under Section 517 of the Act.

17. For various other matters pertaining to the winding up of the company under Sections 433(a), 494(1)(b), 507, 512(1), 546(1)(b), 550(1)(b) of the Act.

18. Any buy-back by the Company of Shares under the provisions of Section 77A of the Act.

19. The granting of any security or creation of any Liens on the assets of the Company or guaranteeing the debts of any Person which in aggregate exceeds 100% of the free reserves and paid up capital of the Company but excluding those necessary to secure operating lines of credit/working capital requirements of the Company with institutional investors, multilateral agencies, scheduled banks and financial institutions.

20. Any one or a series of transactions which causes a sale, lease, exchange or disposition of property or assets of the Company or its subsidiary having an aggregate value exceeding 20% of the total value of the net fixed assets of the Company as specified in the Audited Financial Statement.

21. The making, directly or indirectly, of loans or advances in excess of Rs. 20 Crores to any Person except in the ordinary course of business.

22. Vesting or delegation of such powers to the Managing Director/Chairman cum Managing Director or the Chief Executive Officer or officer of equivalent position in the Company that are in excess of the powers and authority of the Managing Director as specified in Clause 4.7.

23. Any commitment or agreement to do or delegation of any powers to any person to do, any of the foregoing.

Government                                      SP
                                               Page 35                                      Company