UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                                              :
GLENCORE AG,                                  :
                                              :
                    Plaintiff,                :
                                              :          OPINION AND ORDER
        - against -                           :
                                              :          10 Civ. 5251 (SAS)
BHARAT ALUMINUM COMPANY                       :
LIMITED, STERLITE INDUSTRIES                  :
(INDIA) LIMITED, AND VEDANTA                  :
RESOURCES PLC,                                :
                    Defendants.               :
------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11|1|10

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.      INTRODUCTION

        Glencore AG ("Glencore") brings this action to confirm a foreign

arbitral award and to enter judgment on the confirmation. Glencore sues Bharat

Aluminum Company Limited ("Balco"), Sterlite Industries (India) Limited

("Sterlite India") and Vedanta Resources Plc ("Vedanta") (collectively, the

"defendants").

        Glencore and Balco contracted for the sale of twenty-five thousand

metric tons of alumina in September 2008.[1] Glencore claims that Balco breached

---

[1]     *See* 7/9/10 Petition for an Order Confirming Foreign Arbitral Award
("Pet.") ¶ 10.

1

the contract when it refused to perform without a reduction in price.[2] Glencore

commenced arbitration against Balco in England pursuant to an arbitration clause

in the contract.[3] The arbitrator issued an award in favor of Glencore of

$5,731,793.00.[4] Glencore seeks confirmation of the award and judgment entered in

the amount of the award (plus interest) against all defendants, based on its

contention that defendants are alter egos.[5] Glencore also requests pre-judgment

attachment of defendants' property.[6]

Defendants now move to dismiss pursuant to Rules 12(b)(1), 12(b)(2)

and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that this Court

lacks subject matter, personal and quasi in rem jurisdiction and that Glencore failed

to state a claim upon which relief may be granted.[7] Glencore contends that this

Court has personal jurisdiction over all defendants, or in the alternative that this

Court has personal jurisdiction over Sterlite India and Vedanta, and therefore has

---

[2]    *See id.* ¶¶ 17-23.

[3]    *See id.* ¶ 24.

[4]    *See id.*

[5]    *See id.* ¶ 67.

[6]    *See id.*

[7]    *See* 7/28/10 Respondents/Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.").

personal jurisdiction over Balco as their alter ego.[8] For the reasons discussed herein, defendants' motion is granted.

## II.    BACKGROUND

### A.    The Parties

#### 1.    Glencore

Glencore is a business entity organized under Swiss law.[9] Glencore's office and principal place of business is in Baar, Switzerland.[10]

#### 2.    Balco

Balco is an Indian corporation, mining bauxite in India and refining bauxite to create alumina.[11] The Government of India currently owns forty-nine percent of Balco's equity and Sterlite India owns fifty-one percent.[12] Balco's principal office is in New Delhi, India and Balco operates primarily in Chhattisgarh, India.[13] Balco asserts that it does not have any offices in New York,

---

[8]    *See* Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion to Dismiss at ("Pl. Opp. Mem.")14-17.

[9]    *See* Pet. ¶ 5.

[10]    *See id.*

[11]    *See id.* ¶ 2.

[12]    *See id.*

[13]    *See id.* ¶ 7.

3

does not solicit business in New York, has no employees located in New York and does not own or lease any property in New York.[14] Balco had $1.086 billion in assets, $707.69 million in revenues, a $113.91 million net profit and a $711.93 million surplus for the fiscal year ending March 31, 2010.[15]

Balco has 4,868 employees working solely for Balco.[16] Sterlite India seconds 157 of Balco's employees and Balco reimburses Sterlite India for payment of those employees' compensation.[17] Balco's Board of Directors consists of eight members.[18] Two directors are also directors of Sterlite India and Vedanta.[19] Two other directors were nominated by Sterlite India but are not directors, officers or employees of Sterlite India or Vedanta.[20] Another director was nominated by Sterlite India, is an officer of Sterlite India, and is a director of Sterlite India's wholly-owned subsidiary Sterlite USA.[21] The Government of India nominated the

---

[14]     *See id.* ¶ 8.

[15]     *See id.* ¶ 12.

[16]     *See id.* ¶ 13.

[17]     *See id.*

[18]     *See id.* ¶ 21.

[19]     *See id.*

[20]     *See id.*

[21]     *See id.*

remaining three directors.[22] Balco has a senior executive team called the "Business Management Committee" consisting of a CEO and seven officers.[23] No officer on the Business Management Committee is a director or an employee of Vedanta or Sterlite India.[24]

Balco's Code of Business Conduct and Ethics defines the term "Company," as it appears on the company website, as including Balco, Sterlite India and Vedanta.[25] Business cards of Balco executives display a Vedanta logo and provide Vedanta e-mail addresses.[26]

Glencore alleges that Balco conducts business in the United States because Balco entered into a sales agency agreement with Continental Steel & Tubing, a company based in Florida, in May 2008.[27] Glencore also alleges that Balco is the assignee of a patent application in the United States.[28]

---

[22]  *See id.*

[23]  *See id.* ¶ 20.

[24]  *See id.*

[25]  *See* 7/12/10 Declaration of Edward W. Floyd, plaintiff's counsel ("Floyd Decl.") ¶ 9; Balco Code of Business Conduct and Ethics, Ex. 3 to Floyd Decl. at 3.

[26]  *See* Floyd Decl. ¶ 21.

[27]  *See id.* ¶ 24.

[28]  *See id.* ¶ 25.

### 3.    Sterlite India

Sterlite India produces copper.[29] It has two offices and copper rod

plants in India.[30] It asserts that it has no offices in New York, does not own or lease

any property in New York, does not maintain employees in New York, has no

revenue attributable to New York and does not solicit business in New York.[31]

Sterlite India issued five hundred million dollars in notes, convertible to American

Depositary Shares ("ADSs") listed and traded on the New York Stock Exchange

("NYSE").[32] Sterlite India appointed CT Corporation System as an agent to receive

service of process for securities actions brought against Sterlite India.[33] Sterlite

India's SEC filings indicate that when referring to itself or "the Company" in

filings, the reference also includes Balco.[34] Its SEC filings also show that it reports

Balco's financial results fully consolidated with its own.[35] Sterlite India extended

---

[29]    *See* 7/26/10 Declaration of Rajiv Choubey, Company Secretary and
Head-Legal of Sterlite India ("Choubey Decl.") ¶ 2.

[30]    *See id.*

[31]    *See id.* ¶ 3.

[32]    *See* Floyd Decl. ¶ 15.

[33]    *See id.* ¶ 12.

[34]    *See id.* ¶ 11.

[35]    *See* Pet. ¶ 42.

Balco a loan in 2009, which Balco repaid the following year.[36] It also received 28.1 million Rupees in dividends from Balco in the fiscal year ending March 31, 2010.[37]

Sterlite India created a wholly owned subsidiary, a Delaware corporation, Sterlite USA, to acquire the assets of Asarco LLC in a bankruptcy proceeding in the Southern District of Texas.[38] The asset purchase agreement contained a New York choice of law clause.[39] Sterlite India and Sterlite USA are represented by Shearman & Sterling LLP, a New York law firm, in adversarial proceedings related to the asset purchase agreement.[40] Sterlite India, and its parent Vedanta, employed Shearman & Sterling in transactional matters in the past, including Sterlite India's convertible bond issue and ADS issue.[41] In January of 2005 Sterlite India filed a complaint in the United District Court for the Southern District of New York against Vega S.A.[42] Sterlite India employed a New York law

---

[36]   *See id.* ¶ 19.

[37]   *See* Floyd Decl. ¶ 19.

[38]   *See* Pet. ¶ 49.

[39]   *See id.*

[40]   *See* Floyd Decl. ¶ 16.

[41]   *See* 9/10/10 Second Declaration of Edward W. Floyd, plaintiff's counsel ("Floyd Sec. Decl.") ¶ 4; Shearman & Sterling News Reports ("SS News"), Ex. 8 to Floyd Sec. Decl.

[42]   *See* Floyd Sec. Decl. ¶ 15.

firm in that action.[43] Glencore provides evidence that Sterlite India shipped

sulphuric acid into various United States ports in 2008.[44] None of those ports

includes New York.

### 4.   Vedanta

Vedanta is a London listed FTSE 100 diversified metals and mining

company.[45] It is a holding company, organized under English law.[46] Its operations

are located throughout India, as well as in Zambia and Australia.[47] Vedanta owns

fifty-four percent of Sterlite India and is the parent of Balco.[48] Vedanta's corporate

website refers to Vedanta as a "Group" and states that Vedanta has management

control over Sterlite India and that Sterlite India has management control over

---

[43]     *See* 1/21/05 Verified Complaint of Sterlite India against Vega S.A. ("Sterlite India Compl."), Ex. 9 to Floyd Sec. Decl. at 1.

[44]     *See* Floyd Sec. Decl. ¶ 17. It is worth noting that Glencore concedes that the data may be imprecise or untrue. One of the shipments accounts for four billion pounds of sulphuric acid. Glencore admits this figure seems implausible. *See id.*

[45]     *See* 7/26/10 Declaration of Deepak Kumar, Company Secretary of Vedanta ("Kumar Decl.") ¶ 2.

[46]     *See id.*

[47]     *See id.*

[48]     *See* Vedanta Resources Annual Report ("Vedanta Report"), Ex. A to Kumar Decl. at 5.

Balco.[49]  Until June, 2006, Vedanta owned various other organizations, including

one indirect subsidiary incorporated in the state of Georgia.[50] Vedanta purchased

approximately five hundred million dollars of Sterlite India ADSs listed on the

NYSE, which are held at Citibank, N.A. in New York.[51] Vedanta has also issued

bonds in the United States to qualified institutional buyers ("QIBs") and various

foreign entities.[52]

### B.    The Contract

On September 11, 2008, Glencore contracted to sell and deliver to

Balco twenty-five thousand metric tons of alumina (the "Contract").[53] The Contract

called for the delivery of aluminum from a port in Australia to a port in India.[54]

Glencore was to nominate a vessel to carry the aluminum and Balco was to accept

the nominated vessel.[55] Glencore could substitute a vessel at any time subject to

---

[49]     *See* Floyd Decl. ¶ 7; Vedanta Company Website, Ex. 1 to Floyd Decl.

[50]     *See* Floyd Sec. Decl. ¶ 19.

[51]     *See id.* ¶ 11.

[52]     *See* Offering Circular of Vedanta Bonds, Ex. 15 to Floyd Sec. Decl.

[53]     *See* Pet. ¶ 10.

[54]     *See* 9/11/08 Alumina Supply Agreement between Glencore AG and Bharat Aluminum Company Limited ("Alumina Agreement"), Ex. 1 to Pet. at 2.

[55]     *See id.* at 9.

9

Balco's approval, not to be unreasonably withheld.[56] The Contract also contained

an arbitration clause stating that any dispute arising out of the Contract should be

settled by arbitration in London, England.[57]

Glencore nominated a vessel, the M/V F&K, on September 23, 2008

and Balco accepted a day later.[58] Glencore then nominated a substitute vessel, the

M/V WU CHANG HAI on October 16, 2008.[59] Balco did not accept the substituted

vessel.[60] Instead, Balco asked for a reduced Contract price due to the falling price

of aluminum.[61]

From October 17, 2008 through November 5, 2008, Glencore and

Balco attempted to resolve the dispute.[62] Balco and its executives, along with

executives of Sterlite India and Vedanta, communicated to Glencore that they

would not accept the vessel without a lower Contract price.[63] Glencore alleges

---

[56]   See id.

[57]   See id. at 5.

[58]   See Pet. ¶ 15.

[59]   See id. ¶ 16.

[60]   See id. ¶ 17.

[61]   See id.

[62]   See id. ¶¶ 18-21.

[63]   See id. ¶ 19.

10

several instances where Vedanta and Sterlite India were controlling Balco's actions during negotiations.[64] For example, Glencore alleges that on October 22, 2008, Vedanta's Chairman, and Balco's director, Anil Agarwal indicated to Glencore that he would not provide further cash for Balco to pay on the Contract.[65] Glencore further alleges that on November 3, 2008, Glencore met with M S Mehta, Vedanta's CEO, and Puneet Jagatramka, Sterlite India's vice president, to discuss the Contract.[66] Lastly, Glencore alleges that it met with Gunjan Gupta, Balco's CEO, and Jagatramka on November 5, 2008, when Balco again refused to perform and asked for a lower Contract price.[67]

Glencore terminated the Contract that same day.[68] Glencore suggests that throughout the negotiations Vedanta and Sterlite India controlled Balco's position.[69] Glencore further argues that Vedanta and Sterlite India exercised management control over Balco and caused Balco to "refuse to perform its

---

[64]   *See id.* ¶ 20.

[65]   *See id.*

[66]   *See id.*

[67]   *See id.*

[68]   *See id.* ¶ 21.

[69]   *See id.* ¶ 22.

11

obligations."[70]

On November 17, 2008, in a separate action, Glencore filed suit against Balco in the United States District Court for the Southern District of New York for breach of a maritime contract.[71] That suit named neither Vedanta nor Sterlite India as a defendant.[72] However, Balco submitted a declaration by Ravi Rajagopal, Vice President of Balco, which contained financial information for both Vedanta and Balco for the purpose of demonstrating Balco's financial stability.[73] That suit was ultimately dismissed because the contract was not a maritime contract.[74]

### C.    The Arbitral Award

Glencore commenced arbitration against Balco in England pursuant to the Contract.[75] Neither Vedanta nor Sterlite India were parties in the arbitration

---

[70]    *Id.*

[71]    *See* Rajagopal Decl. ¶ 26.

[72]    *See id.*

[73]    *See* Floyd Decl. ¶ 17.

[74]    *See Glencore AG v. Bharat Aluminum Co.*, No. 08 Civ. 9765, 2008 WL 5274569, at *1 (S.D.N.Y Dec. 15, 2008).

[75]    *See* Pet. ¶ 24

proceeding.[76] The arbitrator found in favor of Glencore and issued an award on June 17, 2010.[77] The award amounts to $5,731,793, plus interest, for damages arising from freight-related losses on the sale of alumina, damages arising from demurrage, arbitration costs and legal costs.[78] Glencore demanded, in writing, that Balco pay the arbitration award.[79] Balco did not pay the award, nor did Balco respond to Glencore's demand.[80] Glencore now asks this Court to confirm the award and enter judgment against Balco. Glencore also requests this Court to hold Vedanta and Sterlite India liable as Balco's alter egos and for tortiously interfering with Balco's maritime obligations. Lastly, Glencore asks this Court for pre-judgment attachment of defendants' property. For the reasons that follow, Glencore's Petition is dismissed.

## III.   LEGAL STANDARD

### A.   Personal Jurisdiction

On a motion under Rule 12(b)(2), when the issue of personal

---

[76]   *See* Reasoned Final Award between Glencore and Balco ("Arbitration Award"), Ex. 2 to Pet. at 3.

[77]   *See id.*

[78]   *See id.*

[79]   *See* Pet. ¶ 28.

[80]   *See id.*

13

jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case."[81] "The burden of proving jurisdiction is on the party asserting it."[82] Plaintiffs "can make this showing through [their] own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant."[83] Thus, a court may consider materials outside the pleadings,[84] but must credit plaintiffs' averments of jurisdictional facts as true.[85] "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[86] Nonetheless,

---

[81]    *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

[82]    *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

[83]    *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

[84]    *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

[85]    *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[86]    *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

14

where a defendant "rebuts [plaintiffs'] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted."[87]

### 1.    Traditional Jurisdiction

To determine whether it has personal jurisdiction over a party, a court engages in a two-part analysis. *First*, the court must determine whether there is jurisdiction over the defendant under the relevant forum state's laws.[88] *Second*, the court must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements.[89]

New York subjects a foreign corporation to general personal jurisdiction if it is "doing business" in the state.[90] Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous and systematic course' of 'doing business' here as to warrant a finding of its

---

[87]    *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

[88]    *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

[89]    *See id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[90]    *See* New York Civil Practice Law and Rules § 301 (codifying caselaw utilizing the "doing business" standard).

'presence' in this jurisdiction."[91] "[T]he term 'doing business' is used in reference to foreign corporations to relate to 'the ordinary business which the corporation was organized to do' . . . . It is not the occasional contact or simple collateral activity which is included."[92] "The doing business standard is a stringent one because a corporation which is amenable to the [c]ourt's general jurisdiction 'may be sued in New York on causes of action wholly unrelated to acts done in New York.'"[93]

To determine whether a foreign corporation is doing business in New York, courts focus on criteria including:  (1) whether the foreign corporation has an office in the state; (2) whether it has any bank accounts or other property in the state; (3) whether it has a phone listing in the state; (4) whether it does any public relations work in the state; and (5) whether it has employees who permanently

---

[91]    *Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 191-92 (S.D.N.Y 2000) (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 281 N.Y.S.2d 41, 43 (1967)).

[92]    *Bryant v. Finnish Nat'l Airline*, 253 N.Y.S.2d 215, 219-20 (1st Dep't 1964) (citation omitted).

[93]    *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 2001)).

work in the state.[94]  No single criterion is determinative.[95]  The general jurisdiction

inquiry thus looks to the totality of the defendant's contacts and "permits a court to

exercise its power in a case where the subject matter of the suit is unrelated to

those contacts."[96]

### 2.    Alter Ego Personal Jurisdiction

Courts will find that an alleged alter ego is doing business in New

York "when the subsidiary is acting as an agent for the parent, or when the parent's

control is so complete that the subsidiary is a 'mere department' of the parent."[97]

Determining whether an entity is a "mere department" requires "a fact-specific

inquiry into the realities of the actual relationship between the parent and

---

[94]    *See Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 98 (2d Cir. 2000).

[95]    *See Metropolitan Life Ins. Co.*, 84 F.3d at 570 ("Contacts with the forum state should not be examined separately or in isolation. There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole."); *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) ("The Court must therefore analyze a defendant's connections to the forum state 'not for the sake of contact-counting, but rather for whether such contacts show a continuous, permanent and substantial activity in New York.'") (quoting Weinstein, Korn & Miller, New York Civil Practice ¶ 301.16, at 3-32).

[96]    *Metropolitan Life Ins. Co.*, 84 F.3d at 567-68 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

[97]    *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999) (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).

17

subsidiary."[98]   In particular, a court must consider

> (1) common ownership, (2) financial dependency of the subsidiary on the parent corporation, (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and (4) the degree of control over the marketing and operational policies exercised by the parent.[99]

While the first factor – common ownership – is "essential" for an assertion of jurisdiction, "[t]he other three are important, but not essential."[100]   As such, "[t]he overall weighing of the various factors thus necessitates a balancing process, and not every factor need weigh entirely in the plaintiffs' favor."[101]   When applying the *Beech* test, "[e]stablishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability."[102]   "[T]he exercise of personal jurisdiction over an alter ego corporation does not offend due

---

[98]   *Koehler*, 101 F.3d at 865.

[99]   *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). *Accord Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998) (applying *Beech* factors).

[100]   *Tese Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 416 (S.D.N.Y. 2009). *Accord ESI*, 61 F. Supp. 2d at 52.

[101]   *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004) (quotation marks omitted).

[102]   *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation marks omitted).

process."[103]

### B.   Quasi in Rem Jurisdiction

Where a court lacks personal jurisdiction over a party, jurisdiction may be established "based on the court's power over property within its territory."[104] "A judgment quasi in rem affects the interests of particular persons in designated property."[105] "The effect of a judgment in such a case is limited to the property that supports jurisdiction."[106] Where that property which serves as the basis for jurisdiction "is completely unrelated to the plaintiff's cause of action . . . the presence of the property alone" does not support jurisdiction.[107] "[T]he only role played by the property is to provide the basis for bringing the defendant into court."[108]

If a defendant has property in the state, the court must then consider

---

[103]   *Southern New England Telephone Co. v. Global NAPs Inc.*, — F.3d —, 2010 WL 3325962, at *10 (2d Cir. Aug. 25, 2010) (citing *Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*, 571 F.3d 221 (2d Cir. 1991)).

[104]   *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977). *Accord Allied Maritime Inc.v. Descatrade SA*, — F.3d —, 2010 WL 3447882, at *2 (2d Cir. Sept. 3, 2010).

[105]   *Shaffer*, 433 U.S. at 199 n.17.

[106]   *Id.* at 199.

[107]   *Id.* at 208-09.

[108]   *Id.*

19

whether the exercise of jurisdiction will offend the Due Process clause under the

Fourteenth Amendment,[109] which permits a state to exercise personal jurisdiction

over a non-resident defendant with whom it has minimum contacts so long as the

exercise of jurisdiction "does not offend traditional notions of fair play and

substantial justice."[110]  To establish the necessary minimum contacts, the plaintiff

must show that the defendant "purposefully availed" itself of the privilege of doing

business in the state and thus could foresee being haled into court.[111]

## IV.   APPLICABLE LAW

An action to confirm a foreign arbitral award is not the proper

occasion to assert an alter ego theory for liability.[112] A confirmation action is a

"summary proceeding"[113] where a judge's powers are "narrowly circumscribed" to

"determin[ing] whether the arbitrator's award falls within the four corners of the

---

[109]     *See Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1022 (2d Cir. 1978).

[110]     *International Shoe Co.*, 326 U.S. at 316.

[111]     *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998).

[112]     *See Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963).

[113]     *Encyclopedia Universalis S.A. v. Encyclopedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) (quotation and citation omitted).

dispute as submitted to him."[114] "A district court confirming an arbitration award does little more than give the award the force of a court order."[115] To consider "a potentially voluminous record" detailing the relationship between a party bound by an arbitration award and its alleged alter ego "would unduly complicate and protract the proceeding."[116]

## V.   DISCUSSION

### A.   Claims Against Vedanta and Sterlite India

Vedanta and Sterlite India are not proper parties to this action. Glencore's basis for naming Sterlite India and Vedanta as defendants is its assertion that Vedanta and Sterlite India are alter egos of Balco.[117] However, requesting that the Court pierce the corporate veil for purposes of liability during the confirmation proceeding contravenes clear Second Circuit precedent that an arbitration award may not be enforced under an alter ego theory against the parent corporation of the party subject to the award.[118]

Vedanta and Sterlite India were not parties to the underlying

---

[114]   *Orion*, 312 F.2d at 301.

[115]   *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).

[116]   *Orion*, 312 F.2d at 301.

[117]   *See* Pet. ¶¶ 31-46.

[118]   *See Orion*, 312 F.2d at 301.

arbitration proceeding.[119] The arbitration award was issued only against Balco.[120] Adjudicating whether Vedanta and Sterlite India are alter egos of Balco to hold them liable for the arbitration award would require new fact-finding not contemplated in the arbitration proceeding. Additionally, determining whether Vedanta and Sterlite India tortiously interfered with Balco's performance of its obligation falls outside "the four corners of the dispute as submitted."[121] This Court therefore lacks the authority to determine liability against Vedanta and Sterlite India in this action. Vedanta and Sterlite India's motion to dismiss is therefore granted.

### B.    Personal Jurisdiction

#### 1.    Personal Jurisdiction over Balco

Balco is not subject to personal jurisdiction in this Court. Glencore's only assertions of jurisdiction over Balco are that Balco entered into a contract with a Florida corporation and that Balco is the assignee of a patent in the United States.[122] Glencore points to no Balco operations in or contacts with New York,

---

[119]    *See* Arbitration Award at 3.

[120]    *See id.*

[121]    *Orion*, 312 F.2d at 301.

[122]    *See* Pet. ¶¶ 24-25.

and Balco maintains that it does not conduct any business, own any property or have any presence in New York.[123]  Under these facts Balco is not doing business in New York.[124] Glencore therefore fails to establish a prima facie case that this Court has personal jurisdiction over Balco.

### 2.      Personal Jurisdiction over Balco as Sterlite India and/or Vedanta's Alter Ego

Glencore's other argument for establishing personal jurisdiction over Balco is based on its assertion that Balco is an alter ego of Sterlite India and Vedanta.[125] To find that this Court has personal jurisdiction over Balco as the alter ego of Sterlite India and/or Vedanta, I must find both (1) that this Court has personal jurisdiction over Sterlite India and Vedanta and (2) that Balco is their alter ego.

### a.      Personal Jurisdiction Over Vedanta and Sterlite India

Sterlite India and Vedanta are not subject to personal jurisdiction in this Court because they are not "doing business" in New York. Glencore's allegations of personal jurisdiction over Sterlite India and Vedanta do not meet the

---

[123]      *See* Rajagopal Decl. ¶ 8.

[124]      I therefore do not reach the constitutional question of whether exercising jurisdiction over Balco would be consistent with due process.

[125]      *See* Pl. Opp. Mem. at 15.

five traditional criteria that a court evaluates when analyzing whether it may exercise personal jurisdiction over a foreign entity.[126]

Glencore relies on the following facts to support the exercise of personal jurisdiction over Sterlite India and Vedanta: Sterlite India's listing of ADSs on the NYSE;[127] Sterlite India's issuing notes convertible to ADSs;[128] Sterlite India's appointing CT Corporation System as its agent for service of process for actions brought in connection with its listed securities;[129] Sterlite India's entering into a contract in Texas with a New York choice of law clause;[130] Sterlite India and Vedanta's using a New York-based law firm for an adversarial proceeding and transactional matters;[131] Sterlite India's filing an action for affirmative relief in the Southern District of New York;[132] and Vedanta's purchasing ADSs on the NYSE which are held at a depositary institution in New

---

[126]    See *Wiwa*, 226 F.3d at 98.

[127]    See Floyd Decl. ¶ 11.

[128]    See *id.* ¶ 12.

[129]    See *id.* ¶ 15.

[130]    See Pet. ¶ 49.

[131]    See Floyd Sec. Decl. ¶ 4.

[132]    See *id.* ¶ 15.

24

York.[133] These facts are insufficient to find that defendants are doing business in New York under the five-factor test.

*First*, Glencore does not allege that either Sterlite India or Vedanta has an office in New York and both maintain that they do not.[134] *Second*, Glencore contends that Vedanta owns property in New York because it purchased Sterlite India's ADSs listed on the NYSE and maintains a bank account in New York where these ADSs are held (Citibank, N.A., a depositary institution in New York).[135] The defendants, though, assert that they do not "own[] or lease[] any real, tangible, intangible or personal property in New York."[136] However, drawing all inferences in the light most favorable to Glencore, I conclude that the second factor weighs in its favor. Yet Glencore does not allege any additional facts that satisfy the remaining three criteria. There is no evidence that Sterlite India or Vedanta maintain a phone listing, perform public relations work, or permanently employy

---

[133]     *See id.* ¶ 11. Glencore also alleges that Sterlite India ships materials into United States' ports, none of which include New York, and that Vedanta issued bonds in the United States to QIBs and certain foreign entities. Because these facts are irrelevant to the question of whether defendants are "doing business" in New York, I do not consider them.

[134]     *See* Def. Mem. at 9.

[135]     *See* Floyd Sec. Decl. ¶ 11.

[136]     Def. Mem. at 9.

personnel in New York.

Glencore's remaining allegations do not indicate that defendants are doing business in New York. Defendants' activities relating to their NYSE-listed securities are "insufficient to confer jurisdiction."[137] "[T]he prevailing caselaw accords foreign corporations substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depositary for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."[138] Therefore, the fact that Sterlite India listed ADSs on the NYSE, employed CT Corporation Systems as its agent for service of process and employed Shearman & Sterling LLP in connection with issuing securities does not subject it to jurisdiction in New York. Defendants' additional contacts with New York — utilizing the services of a New York-based law firm in an adversarial proceeding in the Southern District of Texas, entering into a contract with a New York choice of law clause and suing once in New York — are insufficient to constitute "doing business" in New York.

---

[137]   *In re Ski Train Fire*, 230 F. Supp. 2d at 383 (holding that listing securities on the NYSE and employing individuals to "conduct the tasks necessary to facilitate [the] listing" do not confer jurisdiction over a defendant.)

[138]   *Wiwa*, 226 F.2d at 97.

Glencore compares this case to *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*.[139] In *Ski Train Fire*, not only did the defendant issue securities in New York and employ New York-based companies to facilitate their listing, it also utilized a New York-based law firm to register over seven thousand patents, operated a website which proclaimed the United States' integral role in its business, transacted significant sales in the New York region, employed a press contact in New York and repeatedly filed suit in New York.[140] Considering all of those facts together, the court held there were enough continuous and systematic contacts with New York to conclude that the defendant was doing business here.[141] Those additional contacts are absent in this case.

Because the facts alleged by Glencore satisfy only the second factor of the five-factor inquiry, Glencore fails to plead a prima facie case that defendants are doing business in New York. This Court may not, therefore, exercise personal jurisdiction over Sterlite India or Vedanta in accordance with New York law.[142]

### b.   Alter Ego Determination

---

[139]   230 F. Supp. 2d 376 (S.D.N.Y 2002).

[140]   *See id.* at 382-83.

[141]   *See id.* at 384.

[142]   I therefore do not reach the constitutional question of whether exercising jurisdiction over defendants would be consistent with due process.

Determining alter ego status for the purpose of establishing jurisdiction requires application of the *Beech* factors — a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.[143]

*First*, no party disputes the existence of common ownership. Balco is fifty-one percent owned by Sterlite India, which in turn is fifty-four percent owned by Vedanta.[144] Vedanta is thus the common owner.

*Second*, Glencore asserts that because a Vedanta director, who is also a Balco director, stated that he would not provide further cash for Balco to perform the Contract, Balco is financially reliant upon Vedanta.[145] Glencore also points to the prior proceeding between these parties in which Ravi Rajagopal, Vice President of Balco, provided Balco and Vedanta's financial information in a declaration.[146] Glencore argues that by including Vedanta's financial information in an action where Vedanta was not a party, Balco and Vedanta admitted that Balco relies on Vedanta financially and that they are alter egos.[147] Additionally, Sterlite India

---

[143]     *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981).

[144]     *See* Vedanta Report at 5.

[145]     *See* Pet. ¶ 35.

[146]     *See* Floyd Decl. ¶ 17.

[147]     *See id.*

28

reports consolidated financial statements that include Balco's financial results.[148] This suggests, but does not establish, that Balco is financially dependent on Sterlite India.[149]

*Third*, Glencore alleges that defendants have overlapping employees and disregard corporate formalities. Three out of eight of Balco's board members are also directors or officers of Vedanta or Sterlite India.[150] Vedanta or Sterlite India nominated an additional two directors.[151] Glencore also points to Vedanta logos appearing on Balco business cards and Balco executives' using Vedanta e-mail addresses.[152] Additionally, Glencore asserts that because Balco's financial

---

[148]    *See* Pet. ¶ 42.

[149]    *See King County, Wash. v. IKB Deustche Industriebank AG*, — F. Supp. 2d —, Nos. 09 Civ. 8387, 09 Civ. 8822, 2010 WL 1790051, at *5 (S.D.N.Y May 4, 2010) (holding that consolidated financial statements including a subsidiary's financial information with its parent's suggests a subsidiary's financial reliance on its parent); *Compare ESI*, 61 F. Supp. 2d at 53 ("[When reviewing the financial dependency factor,] [c]ourts also inquire whether the subsidiary retains its own profits or whether they are received by and reported on the financial statements of the parent.") *with Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 273-74 (E.D.N.Y. 2010) ("Courts considering [the second *Beech* factor] have held that a finding of financial dependency requires a showing that the subsidiary would be unable to function without the financial support of the parent.") (citing *Reers*, 320 F. Supp. 2d at 157).

[150]    *See* Rajagopal Decl. ¶ 21.

[151]    *See id.* ¶ 22.

[152]    *See* Floyd Decl. ¶ 21.

29

results are consolidated with Sterlite India's,[153] because Balco's Code of Business Conduct and Ethics refers to the "Company" as including the entire conglomerate[154] and because Sterlite India loaned money to Balco,[155] the defendants fail to observe corporate formalities and are alter egos.[156]

*Lastly*, Glencore alleges that Vedanta or Sterlite India control Balco's marketing and operational policies. Glencore cites the involvement of Vedanta and Sterlite India executives in the dispute over the Contract.[157] Glencore also cites Vedanta's website, which states that Vedanta has "management control" over Sterlite India and Balco.[158]

Balco, however, presents evidence to undermine Glencore's allegations that Balco is its parents' alter ego. Balco provides financial information indicating that it is separately and adequately capitalized and does not need financial assistance from Vedanta. With $1.086 billion in assets, $707.69 million in

---

[153]     *See* Pet. ¶ 42.

[154]     *See* Floyd Decl. ¶ 9

[155]     *See* Pet. ¶ 37.

[156]     *See* Rajagopal Decl. ¶ 14.

[157]     *See* Pet. ¶¶ 18-21.

[158]     *See* Floyd Decl. ¶ 7; Vedanta Company Website, Ex. 1 to Floyd Decl.

revenues, a $113.91 million net profit and a $711.93 million surplus,[159] it is difficult to conclude that Balco is financially dependent on Vedanta or Sterlite India. Balco also asserts that the Government of India nominated three of its board members,[160] that it is routine in parent/subsidiary relationships for a parent company to nominate its subsidiary's board members,[161] that it has 4,868 of its own employees,[162] that any Balco employees who come from Sterlite India are paid for by Balco[163] and that Balco's senior executives are all independent of Vedanta and Sterlite India.[164] Balco also argues that the fact that it paid dividends to Sterlite India fails to support Glencore's arguments:[165] Balco paid dividends to Sterlite India and the Government of India on the same terms, because both are Balco's

---

[159]    *See* Rajagopal Decl. ¶ 12.

[160]    *See id.* ¶ 21.

[161]    *See In re Ski Train Fire*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004) ("[Defendants'] ownership of all the stock of [subsidiary] . . . the overlap of directors and the use of consolidated financial statements cannot be considered in any way inconsistent with the normal stockholder-corporation relationship.") (citations omitted).

[162]    *See* Rajagopal Decl. ¶ 13.

[163]    *See id.*

[164]    *See id.* ¶ 20.

[165]    *See id.* ¶ 14.

shareholders.[166] Balco also lists several constraints that its shareholders agreement places on Sterlite India as a majority shareholder, including certain actions that may only be taken with approval from the Government of India.[167]

Glencore claims that this case is similar to *Telenor Mobile Communications AS v. Storm LLC.*[168] However, in *Telenor*, the alleged alter ego parent corporation "negotiated the entire transaction giving rise to [the] dispute, [] paid [its subsidiary's] legal fees during the course of [the] dispute, employ[ed] the subsidiary's *sole officer* and [] initiated collusive litigation aimed to derail the arbitration proceedings. . . ."[169] Vedanta and Sterlite India's involvement in the Contract at issue here do not rise to the level of the parent corporation's involvement with its subsidiary in *Telenor*. There is no evidence that either Vedanta negotiated the entire Contract or that it managed the dispute over the Contract. There are no allegations that Vedanta is paying Balco's legal fees, nor that it engaged in collusive behavior to "derail" Glencore's recovery under the

---

[166]    *See id.*

[167]    *See id.* ¶ 16. These actions include changing its registered office, starting a new line of business, reducing share capital and making loans or guarantees to other companies. *See id.*

[168]    351 Fed. Appx. 467 (2d Cir. 2009).

[169]    *Id.* at 469 (emphasis added).

arbitration award.

Nevertheless, construing the allegations in the light most favorable to Glencore and drawing all inferences in Glencore's favor, I conclude that Glencore has provided sufficient evidence to make out a prima facie case that Balco is an alter ego of Vedanta and Sterlite India.  But because Balco's counter-evidence specifically contradicts plaintiffs' allegations, it would be premature to determine conclusively that, in fact, Balco is the alter ego of defendants. However, even if jurisdictional discovery were to establish that Balco is Vedanta and/or Sterlite India's alter ego, the Court would not have personal jurisdiction over it because, as I concluded above,[170] this Court does not have personal jurisdiction over Vedanta or Sterlite India. Nor does this Court have quasi in rem jurisdiction over defendants, for that matter.[171] Therefore, there is no purpose in permitting discovery as to whether Balco is its parents' alter ego.

### C.    Quasi in Rem Jurisdiction

Glencore asserts that even if this Court lacks personal jurisdiction over defendants, they are still amenable to suit because this Court has quasi in rem

---

[170]    *See supra* Part V.B.2.a.

[171]    *See infra* Part V.C.

jurisdiction over them.[172] To exercise quasi in rem jurisdiction over Balco based on

the presence of Vedanta or Sterlite India's property in New York, this Court must

find that Balco is their alter ego.[173] Glencore must also identify defendants' specific

property in New York and defendants must have minimum contacts with New

York such that exercising jurisdiction over Balco does not offend due process.[174]

Glencore alleges that defendants' "property is, or will be during the

pendency of this action, located within the jurisdiction,"[175] and that the property is

"in connection with the Respondents/Defendants' financial activities in New

York."[176] Glencore further specifies that Vedanta has property in New York in the

form of ADSs held at Citibank, N.A., a depositary, and has the right to receive

dividends on those ADSs.[177] Glencore does not cite any legal authority supporting

the proposition that ADSs and the right to receive dividends constitute property.

However, assuming *arguendo* that ADSs and dividend rights are property, this

---

[172]    *See* Floyd Sec. Decl. ¶ 11.

[173]    This issue cannot be determined without jurisdictional discovery. *See supra* Part IV.B.2.b.

[174]    *See Shaffer,* 433 U.S. at 212.

[175]    Pet. ¶ 4.

[176]    7/12/10 Plaintiff's Memorandum of Law in Support of Application for Ex Parte Order of Attachment at 3.

[177]    *See* Floyd Sec. Decl. ¶ 11.

34

Court still lacks quasi in rem jurisdiction over Balco because Vedanta lacks minimum contacts with New York.

Glencore alleges few links between Vedanta and New York — ownership of ADSs traded on the NYSE, held at a depositary in New York, and utilizing a New York law firm to issue debt and securities.[178] These contacts do not suggest that Vedanta has purposefully availed itself of the privilege of doing business in New York. These contacts would not allow Vedanta to foresee itself being haled into court over a dispute unrelated to the ADSs. To exercise jurisdiction over Vedanta, and therefore its alleged alter ego Balco, would offend "traditional notions of fair play and substantial justice."[179] Thus, although Vedanta may have property within this Court's jurisdiction, this Court cannot exercise quasi in rem jurisdiction over Vedanta — and therefore Balco, on an alter ego theory — consistent with the Due Process Clause of the Fourteenth Amendment.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion is granted and Glencore's Petition is dismissed.

The Clerk of the Court is directed to close the pending motions

---

[178]   *See id.* ¶¶ 11, 14.

[179]   *International Shoe Co.*, 326 U.S. at 316.

(Docket nos. 1 and 8) and this case (10 Civ. 5251).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November _/_ , 2010

- Appearances -

**For Petitioner/Plaintiff:**

Alan Van Praag, Esq.
Edward W. Floyd Esq.
Eaton & Van Winkle LLP
3 Park Avenue
New York, New York 10016
(212) 779-9910

**For Respondents/Defendants:**

Jyotin Hamid, Esq.
Bethany A. Davis Noll, Esq.
Debevoise & Plimpton LLP
919 Third Ave.
New York, New York 10022
(212) 909-6000